FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 03 2014 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

— against —

SHAKEEL WIGGINS,

                Defendant.

ORDER ON PRETRIAL MOTIONS

14-CR-3

JACK B. WEINSTEIN, Senior United States District Judge:

## Table of Contents

I. Introduction ............................................................................................................. 1

II. Facts ....................................................................................................................... 2

III. Law ........................................................................................................................ 4

   A. Probable Cause ................................................................................................ 4

   B. Particularity Requirement ................................................................................ 5

   C. Exclusionary Rule ............................................................................................ 5

IV. Application of Law to Facts ................................................................................. 6

   A. Probable Cause ................................................................................................ 6

   B. Particularity Requirement ................................................................................ 7

      1. Officer's Inquiry ......................................................................................... 7

      2. Validity of the Warrant ............................................................................... 9

   C. Exclusionary Rule .......................................................................................... 10

V. Conclusion ........................................................................................................... 12

I.    Introduction

      Defendant Shakeel Wiggins is charged with five counts of possession of cocaine base with intent to distribute; unlawful use and possession of firearms; and felon in possession of a firearm and ammunition. He moves to suppress items recovered from the search of his

1

apartment on October 4, 2013 on the following grounds: (1) there was no probable cause to issue the search warrant; and (2) the warrant, which did not specify an apartment number, was insufficiently particular because he lived in a multi-family residence.

An evidentiary hearing leads to the conclusion by a preponderance of the evidence that defendant's Fourth Amendment rights were violated because the warrant was insufficiently particular. The evidence recovered from the search is suppressed. *See Franks v. Delaware*, 438 U.S. 154, 156 (1987) ("In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.").

II.     Facts

On September 25, 2013, New York City Police Detective Detective Nicholas Neve received information from a confidential informant ("CI") regarding an ongoing investigation of defendant's drug activities. The previous day, the CI met with defendant at the front door of defendant's house at 107-19 129th Street in Queens County, NY. Defendant told the CI that he had a "new toy" and showed the CI an assault rifle. *See* Search Warrant Aff. ¶ 2, Def.'s Notice of Pretrial Mot., Exh. A, ECF 12.

In preparation of a search warrant application for defendant's home, Detective Neve conducted various inquiries to verify the address and determine whether the building was a single or multi-occupancy structure. The certificate of occupancy for the house was issued for a single-occupancy residence. Tr. 5:8-25. By visual surveillance, he determined that the house had one address, one front door, one doorbell, and one mailbox. Hr'g Tr. 24:8-16 (Mar. 10-11,

2014). He did not notice the two electric meters located on the side of the house. Tr. 24:17-19. Police and Department of Motor Vehicles records listed defendant's address without an apartment number. Tr. 123:11-19. None of these records examined suggested that the building was a multi-family residence.

An additional inquiry by Detective Neve, however, did tell a different story. He ran an "Accurint" report which lists various people who have lived or received mail at an address over many years. *See* Accurint Report, Def.'s Ex. I. The report shows forty-four entries, some containing a single individual and others containing multiple individuals. The first nine results show individuals with the surname Khan. The report notes that: (1) this address is the probable current address for the Khan family listed in the first nine results; and (2) there is an active phone number at the address that is registered to the surname Khan. Defendant appears as the twelfth result. Included in the entry with his name is an active phone number registered to the surname Khan but no marking to show whether it is his probable current address.

With this information, Detective Neve applied for and received a warrant to search "a private three story house located at 107-18 129 Street which has a glass security door clearly marked '10718'". *See* Search Warrant Aff. and Search Warrant, Def.'s Notice of Pretrial Mot., Exh. A, ECF 12. On October 4, 2013, Detective Neve led a team of sixteen officers in the execution of the warrant. During the tactical briefing, Detective Neve informed the team that the premise was a single-family house. Tr. 76:7-17.

The officer responsible for gaining entry into the residence was Detective Myers. He entered the house through the unlocked front door. Inside the hallway, he encountered a locked door to his left, leading to the first floor apartment, and a locked door in front of him, leading to the second floor apartment. Tr. 78:4-14. These doors required a key of the type normally used

3

in New York City to obtain entry to a private apartment in a multi-family residence. Tr. 91:13-14.

Detective Myers rammed open the door leading to the second story, and Detective Neve went up the staircase. Detective Neve saw a member of the Khan family and determined that she was not the suspect, so he completed a security sweep of the second floor apartment and went back downstairs. Tr. 3:13-31:2.

After Detective Neve entered the second story apartment, Detective Myers rammed open the door to the first floor apartment. When he entered the first floor apartment, he saw defendant running down the apartment's hallway carrying a "long" black bag. He drew his gun and ordered defendant to drop the bag. Defendant did so. Other officers then handcuffed defendant.

Detective Myers picked up the bag, opened it, and saw a rifle inside. Tr. 81:11-83:25. He also observed, in plain view, crack cocaine. Tr. 85:1-6. Detective Neve then returned from the second story and conducted a search of the first floor apartment. Inside a kitchen cabinet, he found a handgun and crack cocaine. Tr. 31:12-21.

III. Law

A. Probable Cause

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause requires, under the totality of the circumstances, a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A prima facie showing of criminal activity is not required to show probable cause. *Id.* at 271-2.

4

B. Particularity Requirement

For a search in a multi-family home, the particularity requirement demands that the warrant specify which unit is to be searched. *See United States v. Clark*, 638 F.3d 89, 95 (2d Cir. 2011) ("[T]he search of a multiple-occupancy building must be supported by probable cause to believe that evidence of criminality will be found throughout the building"). If the officer knew, or should have known, that the building was a multi-occupancy structure, the warrant must specify which unit is to be searched. *See Garrison v. Maryland*, 480 U.S. 79, 86 (1987). ("[I]f the officers had known, or even if they should have known, that there were two separate dwelling units . . . they would have been obligated to exclude respondent's apartment from the scope of the requested warrant."). Indicia of whether a building is single or multi-resident includes visual surveillance, police records, public records, and utility company records. *See id.* at 81, 86 n.10; *U.S. v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994).

C. Exclusionary Rule

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is excluded to deter illegal conduct by the government. See *Herring v. United States*, 555 U.S. 135, 144 (2009) ("The exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence."). Suppression of evidence is appropriate if it was obtained based on an insufficiently particularized warrant. *See, e.g., U.S. v. Bermudez*, 526 F.2d 89, 96-97 (2d Cir. 1975) ("Since the warrant could have permitted a search of the entire building, and there was probable cause for search of the bottom floors only, the warrant was defective due to overbreadth and the materials seized were properly suppressed.").

Two exceptions are relevant in this case. First, a good-faith exception applies "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence . . . ." *Davis v. United States*, 131 S.Ct. 2419 (2011). Second, under the inevitable discovery doctrine, "evidence obtained during the course of an unreasonable search and seizure should not be excluded 'if the government can prove that the evidence would have been obtained inevitably' without the constitutional violation." *U.S. v. Heath*, 455 F.3d 52, 55 (2d Cir.2006) (quoting *Nix v. Williams*, 467 U.S. 431, 447 (1984)).

IV.  Application of Law to Facts

   A.  Probable Cause

Defendant argues that the warrant was not supported by probable cause because (1) there is no evidence that the CI is familiar with assault rifles in particular; and (2) it is not necessarily illegal for an individual to own an assault rifle. Neither point undermines the probable cause requirement.

The CI's reliability, interaction with defendant, and his general familiarity with firearms provided probable cause to believe that defendant possessed an assault rifle. The CI had owned firearms himself, and he was able to specify that the firearm he was shown was as an assault rifle with a scope. *See* Search Warrant Aff. ¶ 2-3.

In New York City and New York State, possession of an assault rifle is illegal, with certain specific exemptions. *See* N.Y. Admin. Code §§10-131 *et seq*; N.Y. Penal Code §265.00 *et seq*. Defendant points in particular to a "grandfather clause." *See* Def.'s Memo. in Supp. of Pretrial Mot. 9. Even considering these extremely narrow exceptions, probable cause to search

6

exists. *See Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (explaining the "well established principle that a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged"). In this case, the CI also reported that defendant described the assault rifle as "a new toy," indicating that it was not grandfathered and would likely be prohibited under relevant legislation. *See* Search Warrant Aff. ¶ 2.

B. Particularity Requirement

1. Officer's Inquiry

a) Public Records Check

Based on the records check he conducted, Detective Neve either knew or should have known that the house was a multi-family structure. Although the records do not include individual apartment numbers for the address, the Accurint report clearly shows that a family with the surname Khan lived in the house. Detective Neve testified that, after reviewing the Accurint report, he thought that "multiple people lived at that location." Tr. 17:7-9. This statement is ambiguous regarding whether he thought that: multiple individuals lived in the house at the time he applied for the search warrant; multiple families lived in the house at the time that he applied for the search warrant; or various people lived in the house over the course of many years long before he applied for the search warrant. In any case, based on the names, address, check marks indicating probable current address, and phone numbers in the report, the obvious conclusion should have been that the house is a multi-family residence.

b) Surveillance

Properly conducted surveillance would have revealed that multiple families live at the house. Defendant lived on the first floor with his wife and three children. Tr. 62:3-5. The second and third floor residents were Mrs. Khan, her husband, and their five children. *Id.* Mrs. Khan and her husband leave and return from the house at normal times every day of the work week, and two of the children leave and return from the house at normal times every day of the school week. Tr. 62:3-64:1. On the day the search warrant was executed, for example, Mrs. Khan left the house with her two school-aged children at 8:00 a.m., about an hour before the warrant was executed. Tr. 63:17-64:2 . The exit of these three individuals went completely unnoticed by the detectives, who were stationed outside for surveillance at that time. Tr. 26:18-28:7.

Although Detective Neve testified that he never saw anyone besides defendant enter or leave the building during months of surveillance, Tr. 49:8-14, there was ample opportunity to notice the comings and goings of the upstairs family. A failure by the police to observe these comings and goings is not credible.

c) Utility Company Accounts

Defendant argues that the presence of two utility meters on the south side of the house should have notified the detectives that the house is a multi-family residence. The house is located on a one-way street running north to south, and it is separated from the house to its south by a narrow driveway. Tr. 73:11-18. It is reasonable to assume that, when detectives conducted surveillance from the safety of a moving vehicle, they would not notice the utility meters.

A reasonable inquiry would have required further investigation because the detective had already acquired clear signs that the house was a multi-family residence. Detective Neve could

8

have sought guidance from the New York City Patrol Guide, which instructs officers to inquire at the utility company prior to seeking a warrant. *See* Def.'s Reply Memo. in Supp. of Pretrial Mot., Exh. A, ECF 19. Records from the utility company are a relevant factor in determining the reasonableness of the inquiry. *See Garrison v. Maryland*, 480 U.S. 79 (1987), 81, 86 n.10 (listing utility company records as part of a reasonable investigation); *cf. U.S. v. Fennell*, 496 F.Supp.2d 279, 281 (S.D.N.Y. 2007) (analyzing multiple utility meters as indicia of a multi-family residence but noting that checking utility records is not always required).

In this case, the utility company records show that there were two accounts at that address, with separate meters required. *See* Def.'s Letter dated Mar. 14, 2014, Exh. H, ECF 25. Detective Neve neither specifically looked for the utility meters nor contacted the utility company. Because he was already on notice that multiple families lived in the building, the failure to conclude that there were two apartments was reckless.

### 2. Validity of the Warrant

An officer must conduct a reasonable inquiry to determine if a building is a multi-occupancy structure. *See U.S. v. Fennell*, 496 F.Supp.2d 279, 282 (S.D.N.Y. 2007) (analyzing whether the "officers in this case conducted a reasonable inquiry before determining that the premises was a single-family residence"). The Accurint report, showing that the address was the probable current address of a family other than the defendant's, should have alerted the police to the fact that the house was a multi-occupancy structure. Proper surveillance, which would have shown multiple families entering and exiting the building, should have raised an additional red flag. The utility records, which documented two separate accounts at the address, would have presented yet another red flag. All of these inquiries demonstrate that there were multiple families living at that address.

9

The officers were or should have been on notice that the building had multiple apartments. They failed to either: (1) show probable cause to search the entire house, or (2) specify that probable cause existed to search defendant's apartment in particular. The search warrant is invalid.

C.  Exclusionary Rule

The government argues that evidence from inside the house should not be suppressed because both the good-faith exception and the inevitable discovery rule apply. *See* Gov't's Supp. Memo. in Opp. To Def.'s Pre-Trial Mot., 7-10, ECF No. 20. Neither doctrine is applicable to these facts.

The same detective conducted the investigation for the warrant, swore to the facts in the warrant affidavit, and led the police team in the execution of the warrant. He had in hand documentation that the building was a multi-family residence, yet he recklessly did not reveal that information to the judge who issued the search warrant. This obvious omission in the warrant application and execution forecloses the good faith exception. *See U.S. v. Reilly*, 76 F.3d 1271, 1280-1 (2d Cir. 1996) ("For the good faith exception to apply, the police must reasonably believe that the warrant was based on a valid application of the law to the known facts. ... [I]t is one thing to admit evidence innocently obtained by officers who rely on warrants later found invalid due to a magistrate's error. It is an entirely different matter when the officers are themselves ultimately responsible for the defects in the warrant."); *Rivera v. U.S*, 928 F.2d 592, 604 (2d Cir. 1991) ("Recklessness may be inferred where the omitted information was "clearly critical" to the probable cause determination.").

There is no indication that the police would have inevitably discovered the evidence found inside the house without a proper warrant. The police did not engage in any conduct that

10

would have independently granted them legal access to defendant's apartment. They were not seeking a properly particularized warrant at any point. See *U.S. v. Cabassa*, 62 F.3d 470, 473 (1995) ("[T]he extent to which the warrant process has been completed at the time those seeking the warrant learn of the search is of great importance."). There was time to obtain a warrant since the evidence sought –a rifle –was not readily destroyable.

Evidence obtained from entry into the house is suppressed because the judge issuing the warrant had been knowingly misled. See *U.S. v. Leon*, 468 U.S. 897, 923 (1984) ("Suppression therefore remains an appropriate remedy if the magistrate or judge in issuing the warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth.") (citing *Franks v. Delaware*, 438 U.S. 154 (1978); *U.S. v. Clark*, 638 F.3d 89, 100 (2011) (explaining that "an exception to the exclusionary rule would not apply . . . where the issuing magistrate has been knowingly misled.") (citing *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)). The unconstitutional police conduct– disregarding that the house was a multi-family residence when securing a search warrant–was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. U.S.*, 555 U.S. 135, 144 (2009).

Because the warrant was insufficiently particular and evidence obtained by its execution is suppressed, the court need not consider the constitutionality of police conduct once inside the house.

11

V.  Conclusion

The warrant is invalid; the police knew or should have known that the building was a multi-occupancy structure. Defendants' motion to suppress evidence gained from entry into the building is granted.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: April 3, 2014
       Brooklyn, New York